UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CYNTHIA M. VUOSO, | No. ED CV 15-1255-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 28, 2015, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 22, 2015, and July 31, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 3, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on December 22, 1957. [Administrative Record ("AR") at 302, 310.] She has past relevant work experience as a grocery store sales clerk.[1] [AR at 21, 103.]

On September 14, 2010, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that she has been unable to work since April 9, 2004. [AR at 11, 302, 310.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 11, 159-61.] Hearings were held on June 21, 2012, and September 27, 2012, during the latter of which plaintiff appeared with a non-attorney representative, and testified on her own behalf. [AR at 28-71; see also AR at 11, 204.] A vocational expert ("VE") also testified at the September 27, 2012, hearing. [AR at 60-70.] On November 2, 2012, the ALJ issued a decision ("2012 Decision") concluding that plaintiff was not under a disability from April 9, 2004, the alleged onset date, through November 2, 2012, the date of the decision. [AR at 121-30.] Plaintiff requested review of the ALJ's 2012 Decision by the Appeals Council. [AR at 208.] The Appeals Council granted plaintiff's request for review under the substantial evidence and new and material evidence provisions of the Social Security Administration regulations, and remanded the matter to the ALJ with instructions. [AR at 137-39.] On remand, a hearing was held on April 24, 2014, at which time plaintiff again appeared with a non-attorney representative, and testified on her own behalf. [AR

---

[1] There is some confusion between the ALJ's 2014 decision and the 2014 hearing transcript regarding the Dictionary of Occupational Titles ("DOT") number the VE determined represented plaintiff's past relevant work. At the 2014 hearing, the VE first testified that the DOT number was 290.477-018 and that the "official title is grocery sales clerk." [AR at 103.] He then also referred to the DOT number as 290.477-014, even after the ALJ questioned whether it was "-018" or "-014." [AR at 104.] The 2014 Decision describes the position as DOT number 290.477-014. [AR at 21.] DOT number 290.477-014 is described simply as "Sales Clerk" by the DOT; DOT number 290.477-018 is described as "Sales Clerk, Food," and "may be designated according to type of food sold as Grocery Clerk . . . ." DOT No. 290.477-018. Because DOT number 290.477-018 may pertain to the grocery food industry, as did plaintiff's previous work, the Court assumes that the DOT number and occupation actually at issue is 290.477-018, "Sales Clerk, Food." Plaintiff uses DOT number 290.477-018 as well [JS at 6-8], although defendant refers to DOT number 290.477-014. [JS at 11.] Although the described tasks for each occupation are different, both 290.477-014 and 290.477-018 require frequent reaching, so the designation does not impact on the issues herein.

2

at 72-113.] A VE also testified. [AR at 102-10.] On September 19, 2014, the ALJ issued a decision ("2014 Decision") again concluding that plaintiff was not under a disability from April 9, 2004, the alleged onset date, through September 19, 2014, the date of the decision. [AR at 11-21.] When the Appeals Council denied plaintiff's request for review on April 28, 2015 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

# IV.

# **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful

work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 9, 2004, the alleged onset date.[2] [AR at 14.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the left shoulder, status post-surgery on December 4, 2002; disc disease of the cervical spine; disc disease of the lumbar spine; diabetes; and obesity. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 15.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[4] as follows:

> Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for six hours out of an eight-hour workday; can sit for six hours out of an eight-hour workday; cannot climb ladders, ropes or scaffolds; is not limited in climbing ramps or stairs; and can perform occasional overhead reaching with the left upper extremity, but is not limiting [sic] in reaching with the upper right extremity.

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2009. [AR at 14.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[AR at 15-16.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is capable of performing her past relevant work as a grocery store sales clerk as generally performed. [AR at 21, 103-04.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of April 9, 2004, through September 19, 2014, the date of the decision. [AR at 21.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) found that plaintiff can perform her past work as generally performed; and (2) rejected plaintiff's subjective symptom testimony. [Joint Stipulation ("JS") at 4.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

### A. PAST RELEVANT WORK

Plaintiff contends that the ALJ erred at step four of his analysis. [JS at 5-11, 14.] Specifically, plaintiff argues that her RFC limitation to *occasional* overhead reaching with her left upper extremity precludes her from performing her past relevant work as a grocery store sales clerk, which, according to the DOT, requires *frequent* overhead reaching.[5] [Id.]

Plaintiff's RFC limits her to occasional overhead reaching with her left upper extremity, and the ALJ's hypothetical to the VE included this limitation.[6] [AR at 15-16, 104.] Plaintiff observes

---

[5] The Court notes that in the 2012 Decision the ALJ determined that plaintiff's past relevant work was as a grocery cashier/front end clerk (DOT No. 211.462-014) [see AR at 129] -- a position that requires *constant* reaching. [AR at 61, 129.] In the 2014 Decision, the ALJ noted the VE's 2014 testimony that plaintiff's past relevant work, now re-classified by the VE as that of a grocery store sales clerk (i.e., DOT No. 290.477-018) "is more consistent with the medical/vocational analysis in the file," than was the determination by the prior VE in 2012 that plaintiff's past relevant work should be classified as a grocery cashier/front end clerk (i.e., DOT No. 211.462-014). [AR at 21.]

[6] The ALJ gave two additional hypotheticals to the VE: one that indicated "no overhead reaching with the left upper extremity," and the other allowing for frequent reaching with the left upper extremity. [AR at 104-05.] When asked if the hypothetical individual could still perform the
(continued...)

that the DOT describes the position of "Sales Clerk, Food," DOT number 290.477-018, as requiring *frequent* reaching. [JS at 6.] Reaching is described by the Administration as "extending the hands and arms in any direction." [JS at 7 (citing Soc. Sec. Ruling ("SSR")[7] 85-15).] Thus, plaintiff argues, an occupation that requires significant reaching "is assumed to require reaching in any direction, including overhead, absent contrary persuasive evidence." [JS at 8 (citing cases).]

On cross-examination, plaintiff's attorney asked the VE to explain the discrepancy in his testimony that a hypothetical individual limited to occasional overhead reaching with the left arm could perform the position of grocery store sales clerk, which, according to the DOT, requires frequent reaching.[8] [AR at 108.] The VE testified that his understanding of the hypothetical was that whatever overhead reaching is required could be done with the right hand, and that his testimony was based on his own "firsthand experience working in a grocery store," as well as his education and experience in the field. [AR at 109.] Counsel then noted that plaintiff had testified that she sometimes had to stock a case of water bottles, or even dog food, and that such items would seem to require the use of both hands. [Id.] The VE testified "[m]aybe yes, maybe no. It all depends on -- those things may or may not be required over shoulder level or above. Maybe

---

[6](...continued)
past work of the grocery store sales clerk, in response to the first hypothetical the VE testified "I believe so," and to the second, "Yes." [AR at 105.]

[7] "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[8] One of the reasons for the Appeals Council remand of the 2012 Decision was that the "constant reaching" required to perform plaintiff's past relevant work -- determined at that time to be as a grocery clerk/front end clerk, DOT No. 211.462-14 -- is "a requirement seemingly inconsistent with the decisional findings that the claimant was limited to either occasional or frequent overhead lifting." [AR at 137.] If, as the Appeals Council opined, a limitation to either occasional or frequent lifting with the left arm is "seemingly inconsistent" with a DOT description requiring constant reaching, then, by the same logic, a limitation to occasional reaching with the left arm is "seemingly inconsistent" with a DOT description requiring frequent reaching.

it will, maybe it won't, so it does not definitely say yes or no." [Id.] He then went on:

> [T]ypically the stock clerk . . . will put [such items] at the lower level . . . [and] you're not going to see things over ten, twelve pounds generally speaking at that [higher] level simply because the customers -- they just don't want the customers running the risk of dropping the product, damaging the product, injuring themselves, so typically you will not see it. I suppose in real life there are exceptions to every rule.

[Id.] Plaintiff notes that at least some of the activities described in the DOT, including "obtaining items from shelves," weighing items, cleaning shelves, and setting up displays and stocking shelves, appear to require the use of both upper extremities overhead. She argues that the VE's experience "working as a grocery sales clerk, at an unknown time and place, does not provide a persuasive explanation for deviating from the DOT" and, because the VE's equivocal testimony did not provide a persuasive reason for deviating from the DOT, the ALJ could not rely on the testimony. [JS at 10.] Thus, substantial evidence does not support the ALJ's determination that plaintiff can return to her past relevant work as a grocery store sales clerk as generally performed "in light of the limitation to occasional overhead reaching with the left arm when the DOT states that [the grocery store sales clerk occupation] requires frequent reaching." [JS at 10-11.]

Defendant contends that there is nothing in the DOT suggesting that the grocery store sales clerk position requires reaching with both arms. [JS at 12 (citing Carey v. Apfel, 20 F.3d 131, 146 (5th Cir. 2000) and other cases).] Defendant also argues that plaintiff's limitation to occasional overhead reaching on the left side "would mean that she could still perform bilateral overhead reaching occasionally," and that while she is "limited to occasional overhead reaching on her left side, she could still reach in all other directions on her left side and has no reaching limitations on her right side." [JS at 13 (citation omitted).] Thus, "the fact that a job requires frequent reaching would not preclude Plaintiff from performing it." [Id.] Defendant argues that although the VE "could not say 'for sure'" whether plaintiff could perform her past relevant work, it is plaintiff's burden to show that she could not return to that work, and plaintiff failed to do so. [Id.]

In determining whether appropriate jobs exist for a claimant, the VE generally will refer to the DOT. Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must

inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT). At the hearing, the ALJ asked the VE to "let us know the difference" if he gave "an opinion that's different from the DOT." [AR at 103.] Although the ALJ did not specifically ask whether the VE's opinions were consistent with the DOT, and the VE did not volunteer such testimony, when questioned by plaintiff's representative the VE admitted that there was indeed a discrepancy. [See AR at 108 ("Q: . . . And so your testimony was that if a person was limited to occasional reaching overhead, you thought they could still perform the work per the DOT? A: Yes. Q. Can you explain that discrepancy? A. Sure, yes. . . .").]

The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. In making disability determinations, the ALJ may rely on the testimony of a VE that contradicts the DOT, but only insofar as the record contains *persuasive* evidence to support the deviation. Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, the ALJ must first determine whether a conflict exists, and if it does, the ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. Id. Only after determining whether the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).

Here, plaintiff's past relevant work as identified by the VE is described by the DOT as

requiring "frequent" reaching. As acknowledged by the VE, this conflicts with plaintiff's limitation to only occasional overhead reaching with her left upper extremity. [AR at 108-09.] The VE "explained" the discrepancy as follows:

> A. . . . As I understood the hypothetical, it was to the left upper extremity, not to the right upper extremity, and so the reaching could be done, whatever overhead reaching is required, could be done with the right hand.
>
> Q. Does the Dictionary of Occupational Titles break it down how much is required reaching left to right arm?
>
> A. No.
>
> Q. And so what is your testimony based upon?
>
> A. Several things, counsel. In this particular instance I have firsthand experience working in a grocery store, but then also beyond that, just on my education and experience in this field.

[Id.] The VE also admitted, however, that there might indeed be times that overhead reaching with both arms could be required. [AR at 109-10.]

In his 2014 Decision, the ALJ specifically noted that, "[t]he vocational expert indicated this job does not require the performance of duties precluded by the maximum residual functional capacity adopted herein." [AR at 21.] He also indicated that the VE testified that although the DOT requires frequent reaching, the hypothetical individual would remain able to perform this work even if limited to occasional overhead reaching with the left upper extremity, "because the hypothetical individual was not limited on the right side, and thus the overhead reaching could be performed using the right upper extremity." [AR at 21 n.2.] The ALJ also noted that the VE's testimony was based on the VE's personal experience working in a grocery store and on his education and training as a VE. [AR at 21 n.2.] A VE's recognized expertise provides the necessary foundation for his or her testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Thus, no additional foundation is required.

Accordingly, based on the ALJ's determination that the VE's explanation for the conflict was based on the VE's prior experience, as well as on his education and training as a VE, the ALJ properly relied on the VE's testimony. See Light, 119 F.3d at 793.

Remand is not warranted on this issue.

**B.     CREDIBILITY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 15.]

As summarized by the ALJ, plaintiff testified at the 2012 and 2014 hearings as follows:

> The claimant alleged that she remains unable to work due to narrowing of the spine, cervical spine impairment, torn rotator cuff in the shoulders, carpal tunnel syndrome, diabetes, and high cholesterol. She reported that since the prior hearing in September 2012, her condition has worsened. She testified that she has been told her body is stressed. She stated that she does not lift and carry anything above five pounds because it is too painful. The claimant testified that she has a pinched nerve on the left side of her neck. She reported that she can stand and walk for 30 minutes before she experiences back spasms. She testified the spasms generally last for one hour or two. She reported some days her hands hurt, swell, and lose sensation.
>
> The claimant reported that she has some plants in her yard and she continues to garden. However, she reported that she does not garden as often as she used to. She acknowledged she remains able to grocery shop. She testified that she drives to the grocery store, which is about five miles away. She reported that she spends about a half hour in the grocery store. She testified that she also occasionally shops at department stores, like Ross. She stated that on a typical day she visits with friends, including playing bingo.
>
> Concerning self-reported medical treatment the claimant testified that she lies down to relieve pain. She reported that she also takes ibuprofen for pain. She testified that she takes tramadol for arthritis. She reported that she has oxycodone, but she does not take it. The claimant denied any medication side effects. She described one hospitalization for her kidneys after the last hearing; however, she denied any subsequent complications related to her kidneys.

[AR at 16-17.] The ALJ "incorporated by reference" the credibility analysis from the 2012 Decision. [AR at 16.]

In the 2012 Decision, the ALJ found that (1) plaintiff's allegations of disabling back, shoulder, and knee pain were "inconsistent with the objective medical evidence, which indicates an attempt . . . to exaggerate the severity of her symptoms"; (2) her daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations"; and (3) her treatment is routine and conservative in nature, and not consistent with complaints of disabling limitations. [AR at 126-27.] In the 2014 Decision, the ALJ also found that plaintiff's "allegation of a worsening of her condition since the prior hearing is inconsistent with the objective medical evidence, which suggests possible overstatement of the severity of the claimant's symptoms." [AR at 17.] He again found that plaintiff's daily activities, as indicated by

her testimony at the 2014 hearing, "are at odds with her allegations of disabling limitations." [Id.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 16-18], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (internal quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's

allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, the ALJ stated that plaintiff's statement concerning the intensity, persistence, and limiting effects of her symptoms was "less than fully credible for the reasons discussed in the prior decision." [AR at 17.] In the prior 2012 Decision, the ALJ stated that plaintiff's allegations of disabling back, shoulder, and knee pain were "inconsistent with the objective medical evidence, which indicates an attempt by the claimant to exaggerate the severity of her symptoms." [AR at 126.] The ALJ then reviewed the medical evidence of record. [AR at 126-29.] Then, with regard to plaintiff's daily activities, the ALJ in the 2012 Decision summarized plaintiff's daily activities -- including driving, shopping, housecleaning, caring for pets, preparing simple meals, socializing daily with others, and caring for her own hygiene needs -- and then stated that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." [AR at 126; see also AR at 16.] However, the ALJ provided no explanation as to which of the purported physical and mental abilities and social interactions required for those tasks he found to be the same as those necessary for obtaining and maintaining employment.

The Court finds the ALJ's credibility determination insofar as it discusses the objective medical evidence and plaintiff's daily activities to be virtually indistinguishable from the credibility determination rejected by the Ninth Circuit in Brown-Hunter and in Burrell. As in Brown-Hunter, the ALJ here "simply stated [his] non-credibility conclusion and then summarized the medical evidence supporting [his] RFC determination." Brown-Hunter, 806 F.3d at 494. Additionally, he did not identify the testimony he found not credible, and "link that testimony to the particular parts of the record" supporting his non-credibility determination. Id.; see also Burrell, 775 F.3d at 1138. Similarly, although the ALJ also summarized plaintiff's daily activities, he "did not elaborate on *which* daily activities conflicted with *which* part" of plaintiff's testimony. Burrell, 775 F.3d at 1138. In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony

13

was not arbitrarily discredited," nor can the error be found harmless. Brown-Hunter, 806 F.3d at 494-95 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing Burrell 775 F.3d at 1138, Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014)).

However, the ALJ also found that plaintiff's treatment for her impairments has been routine and conservative in nature, and is not consistent with her complaints of disabling limitations. [AR at 126-27.] He noted that she had left shoulder surgery in 2002 and it "appears this surgery was successful and no further treatment is being provided"; that her knee and back pain is treated with medication; that her diabetes is controlled with diet; and that she is not receiving any treatment for depression. [Id.] In April 2014, plaintiff testified that she lies down to relieve her pain and back spasms, takes ibuprofen and Tramadol, and that she had been prescribed oxycodone but did not take it as she refused to take "that kind of drug." [AR at 16-17, 97-98.] Additionally, she testified that Tramadol "somewhat" helps the arthritis pain in her knee [AR at 49], and that ibuprofen helps with her spasms and is "real good" for her. [AR at 98.] Noting that she has been prescribed oxycodone and Tramadol for her pain, plaintiff argues that the ALJ's finding that her treatment has been routine and conservative is not a clear and convincing reason for discrediting her subjective symptom allegations. [JS at 21.] Defendant argues that the fact plaintiff was prescribed narcotic medication "is insufficient to undermine the ALJ's [credibility] finding . . . particularly when, as here, narcotic medications were the sole or primary treatment," and where plaintiff's testimony suggested that not only was her treatment conservative, but was also effective.[9] [JS at 27-28

---

[9] Although in the 2012 Decision the ALJ noted that plaintiff's knee and back pain is "treated with medication," he does not otherwise discuss the overall *effectiveness* of plaintiff's medication in controlling her pain. In considering the ALJ's decision, the Court is "constrained to review the reasons the ALJ asserts," Brown-Hunter, 806 F.3d at 492 (citation omitted), and cannot consider post hoc reasoning by defendant, or even the evidence upon which the ALJ could have relied. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is
(continued...)

14

(citations omitted).]

In discounting a claimant's credibility, an ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson, 60 F.3d at 1432. "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an over-the-counter pain medication" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); SSR 96-7p (claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"); Martinez v. Colvin, 2014 WL 2533784, at *3 (C.D. Cal. June 5, 2014) (ALJ properly discounted claimant's testimony based on conservative treatment when no physician recommended surgery and claimant was treated with "pain management" and epidural injections); Walter v. Astrue, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on conservative treatment consisting of medication, physical therapy, and injection).

Here, whether or not she takes it, plaintiff has been prescribed strong narcotic medications to help control her pain. See Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications."); Brunkalla-Saspa v. Colvin, 2014 WL 1095958, at *1 (C.D. Cal. Mar. 18, 2014) ("[T]he ALJ found that Plaintiff had been conservatively treated with Vicodin. . . . But Vicodin qualifies as strong medication to alleviate pain") (citations and quotations

---

[9](...continued)
constrained to review the reasons the ALJ asserts" and finding error where the court affirmed the ALJ's decision "based on evidence that the ALJ did not discuss") (citing Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)). Thus, defendant's argument suggesting that the ALJ discounted plaintiff's credibility in part on the ground that her medication *effectively* controlled her pain is not a conclusion explicitly reached *by the ALJ*, and, therefore, is unpersuasive.

omitted); Hung Thanh Le v. Astrue, 2010 WL 1854081, at *6 (C.D. Cal. May 6, 2010) ("Vicodin qualifies as strong medication to alleviate pain."); Eicholtz v. Astrue, 2008 WL 4642976, at *3 (C.D. Cal. Oct. 20, 2008) (court acknowledged the precept that "[a]n ALJ may discount a claimant's testimony based on conservative treatment," but implied that this precept was inapplicable because the claimant took Tramadol); but see Jones v. Comm'r of Soc. Sec., 2014 WL 228590, at *7-10 (E.D. Cal. 2014) (ALJ properly found that plaintiff's conservative treatment, which included physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy, diminished plaintiff's credibility); Higinio v. Colvin, 2014 WL 47935, at *5 (C.D. Cal. 2014) (holding that despite the fact that the claimant had been prescribed narcotic pain medication at various times, the claimant's overall treatment -- which also included use of a back brace and a heating pad -- was conservative).

The Court recognizes that the case authority considering whether use of narcotic pain medication by itself constitutes "conservative" treatment goes both ways. Under the circumstances here, however, where plaintiff has been prescribed two narcotic medications (one that she takes and finds "somewhat" helpful, and one that she does not take), and one non-narcotic anti-inflammatory (which is "real good" for her), and where there is no evidence that she has received any other pain-related treatment -- such as a TENS unit, physical therapy, a corset or brace, or epidural steroid injections -- the fact that plaintiff has been prescribed narcotic medications does not negate the reasonableness of the ALJ's finding that plaintiff's treatment *as a whole* during the relevant period (April 9, 2004, through September 19, 2014) was conservative and routine.

/

/

/

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  March 16, 2016

                                          PAUL L. ABRAMS
                               UNITED STATES MAGISTRATE JUDGE